## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MINISTER MARQUIS KIMBLE,**

    Plaintiff,

    v.

**HOME POINT FINANCIAL
CORPORATION, et al.,**

    Defendants.

CASE NO. 3:26 CV 755

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND
ORDER**

### INTRODUCTION

On March 30, 2026, *pro se* Plaintiff Marquis Kimble ("Kimble") filed this action against Home Point Financial Corporation ("Home Point"), Rushmore Servicing LLC ("Rushmore"), Mr. Cooper Mortgage ("Mr. Cooper") and MNP Properties, LLC ("MNP Properties"). (Doc. 1). Kimble filed this action seeking to enjoin Home Point, Rushmore, and Mr. Cooper from enforcing a foreclosure judgment entered by the Lucas County Court of Common Pleas on January 28, 2019. *See* Doc. 1, at 13; *see also* Doc. 3; *Home Point Fin. v. Arnold*, No. G-4801-CI-0201803432-000 (Lucas Cnty. Ct. C.P.). In addition, he seeks monetary damages from MNP Properties for canceling a purchase agreement. The claims against MNP Properties are wholly unrelated to the claims against the other mortgage servicers. For the reasons stated below, this Court will dismiss the claims against MNP Properties, without prejudice, for misjoinder. Furthermore, this Court cannot interfere with a pending state court action by issuing judgment on issues before the state court and cannot enjoin a state court proceeding. Thus, this Court will deny all requests for injunctive relief and stay these proceedings against Home Point, Rushmore, and Mr. Cooper until the state court

foreclosure action and sheriff's sale have been completed and all appeals resulting from that case have concluded.

## BACKGROUND

Plaintiff obtained a residential mortgage loan from Home Point on September 12, 2017. (Doc. 1, at 4). The loan was structured as a 15-year fixed rate mortgage, rather than the 30-year mortgage term commonly obtained by home buyers. *Id.* While the mortgage is paid off in half the time of the traditional mortgage term, the monthly payments are higher. Approximately one month after entering into this mortgage, Plaintiff also opened a home equity line of credit with Citizen's Bank, which is also secured by the property. Kimble was unable to keep up with the mortgage payments and fell behind on his mortgage. *See id.* at 4. He contends that this was due to loss of income and financial instability caused by his numerous litigation activities in state and federal courts. *Id.* At some point, Kimble made a partial mortgage payment to Home Point. Instead of applying that payment to the loan as Kimble intended, Home Point placed it in a suspense account to be applied only when the remaining balance of that monthly payment was tendered. *Id.*

On August 17, 2018, Home Point filed a foreclosure action against Kimble and another individual, Ebony Arnold. *See id.*; *Home Point Fin. v. Arnold*, No. G-4801-CI-0201803432-000 (Lucas Cnty. Ct. C.P.); *see also* Doc. 12-5 (state court docket). Kimble was served with the Complaint on August 22, 2018. Although he had not responded to the Complaint, the Lucas County Court of Common Pleas docket reflects that in November 2018, Home Point alerted the court that Kimble made his first attempt at loss mitigation and asked the court to stay the proceedings to allow him to pursue this option. The docket does not clarify whether this was a formal application for loss mitigation or some other type of negotiation for relief. The court granted that Motion. Apparently Kimble's attempts at mitigation of his loss were unsuccessful, and the foreclosure case was reinstated to the court's active docket in January 2019.

When Kimble still had not responded to the Complaint four months after Home Point perfected service on him, Home Point filed a motion for default judgment on January 10, 2019. Kimble did not respond to the Motion, nor did he file an Answer, a Motion to Dismiss, or a Leave to Plead. The court granted a default judgment of foreclosure to Home Point on January 28, 2019.

The court set the property for sheriff's sale. Before the sale could take place, Kimble filed for bankruptcy on April 11, 2019. *See in re Marquis Kimble, Sr.*, No. 19-31105 (Bankr. N.D. Ohio) This stayed the foreclosure proceedings on April 15, 2019 and caused the court to withdraw the sheriff's sale. Plaintiff's bankruptcy proceeding was dismissed on November 5, 2019.

On February 11, 2020, the state court issued another Order of Sale. On March 6, 2020, Home Point alerted the court that Kimble had again sought loss mitigation and requested a stay of the foreclosure proceedings to allow Kimble to pursue this relief. It appears that this attempt also was unsuccessful. Just three days later, on March 9, 2020, the court cancelled the order withdrawing the property from sheriff's sale. Kimble still had made no attempt to respond to any of the foreclosure proceedings in the Common Pleas Court.

From March 9, 2020 to October 20, 2023, there is no activity on the docket in the foreclosure case, presumably due to the Covid-19 pandemic. The docket of the United States Bankruptcy Court for the Northern District of Ohio, however, indicates that Kimble filed another bankruptcy in May 2020. *See In Re Marquis L. Kimble, Sr.*, No. 20-31340 (Bankr. N.D. Ohio). As part of the Chapter 13 Plan, Kimble was ordered on October 17, 2020, to remit to the Trustee $3,275.00 each month from which the Trustee would pay his mortgage payment, fixed monthly payments of his secured creditors including Citizens Bank, all other secured claims and then unsecured claims. *See id.* On December 17, 2020, the Trustee notified the Bankruptcy Court she would not be able to make the mortgage payment because Kimble had not tendered sufficient funds for her to do so. On February 19, 2021, the Trustee filed a Motion to Dismiss the bankruptcy citing

3

Kimble's non-compliance with the Plan. The Bankruptcy Court granted that Motion on March 23, 2021. The second bankruptcy case was closed on June 8, 2021.

In 2023, Home Point transferred the servicing of the loan to Mr. Cooper. Mr. Cooper maintained the suspense account. Mr. Cooper then transferred the servicing of the mortgage to Rushmore. Rushmore also maintained the suspense account with the partial payment.

On January 29, 2024, the Common Pleas Court reset the property for sheriff's sale. Due to the passage of time, the court ordered a new appraisal and on April 16, 2024, issued a Notice of Sheriff's Sale.

On May 3, 2024, Home Point[1] notified the Common Pleas Court that Kimble was again pursuing loss mitigation, and asked the court to withdraw the property from sheriff's sale while Kimble pursued this remedy. The court granted that request, even though Kimble still had not entered an appearance in the foreclosure action or participated in it in any way. It appears Kimble was unable to obtain loss mitigation relief. The stay was lifted and the case resumed.

On August 22, 2024, the court again set the property for sheriff's sale. Kimble filed another Chapter 13 bankruptcy on September 13, 2024. *See In Re Marquis L. Kimble, Sr.*, No. 24-31724 (Bankr. N.D. Ohio) On September 16, 2024, the state court stayed the case pending resolution of the bankruptcy action. The Bankruptcy Trustee filed a motion to dismiss the bankruptcy on November 19, 2024, stating to the Bankruptcy Court that Kimble did not attend the meeting of the creditors and had not made any plan payments. The Bankruptcy Court granted that Motion on December 20, 2024. The bankruptcy case was closed on January 14, 2025.

---

1. For the sake of clarity in the opinion, the Court will continue to reference Home Point as the Plaintiff in the foreclosure action.

4

Upon learning of the termination of the bankruptcy case, the Common Pleas Court issued another Order of Sale on March 5, 2025. That sale was first scheduled to take place on May 7, 2025 but was rescheduled to June 25, 2025.

On June 24, 2025, the day before the scheduled sheriff's sale, Kimble filed another Chapter 13 Bankruptcy. This filing once again stayed the foreclosure sale. On August 15, 2025, the Bankruptcy Trustee filed a Motion to Dismiss because Kimble did not attend the first creditors meeting and had not made any plan payments. The Bankruptcy Court granted that Motion on August 27, 2025 and dismissed the case. The bankruptcy case was closed on September 16, 2025. *See In Re Marquis L. Kimble, Sr.*, No. 25-31312 (Bankr. N.D. Ohio)

The Common Pleas Court was notified of the termination of the bankruptcy on September 18, 2025. The court issued an Order of Sale Without Appraisal on October 7, 2025. On November 4, 2025, the court scheduled the sheriff's sale to take place on December 3, 2025.

On October 31, 2025, for the first time since he was served with the Complaint for foreclosure on August 22, 2018, Kimble responded to the foreclosure proceedings by filing a Motion for Relief from Judgment under Ohio Civil Rule 60(b). The court denied the Motion on the day it was filed.

Kimble then attempted to evade the pending sheriff's sale by selling the house outside of the foreclosure, without the knowledge of the lienholders or the Common Pleas Court. He alleges that on November 15, 2025, he entered into a purchase agreement with MNP Properties LLC for the sale of the property that is the subject of the foreclosure. (Doc. 1, at 6). He claims the deal would have allowed him to remain in the house for six months, and then buy it back from MNP Properties, all while keeping the proceeds from the sale. *Id.* He claims that MNP Properties, however, abruptly backed out of the sale prior to closing. *Id.* at 6-7. He contends that MNP Properties made this decision based on his race and his civil rights litigation activities. *Id.* at 7.

5

On December 2, 2025, the day before the scheduled sheriff's sale, Kimble filed another Chapter 13 bankruptcy. *See In re Marquis L. Kimble, Sr.*, No. 25-32614 (Bankr. N.D. Ohio). Unfortunately, the notice of the filing of the bankruptcy was not conveyed to the Common Pleas court until December 8, 2025, and by that time the property had been sold at the sheriff's sale on December 3, 2025. Upon discovery of the bankruptcy, the Common Pleas Court issued an Order withdrawing the sale and ordering a refund of the deposit paid by the purchaser.

Kimble again failed to participate in this bankruptcy case. He did not file any of the required documents, including a Chapter 13 Plan, the Means Test Form, Schedules A/B-J, Summary of Assets and Liabilities, Statement of Financial Affairs, Declaration Concerning Schedules, and Employee Income Records. He also failed to make the filing fee installment payments. On December 19, 2025, the Bankruptcy Court dismissed the case with prejudice "for cause and willful failure to obey the orders of the court." *See In Re Marquis L. Kimble, Sr.*, No. 25-32614 (Bankr. N.D. Ohio) (Doc. 23). The Bankruptcy Court also imposed sanctions on Kimble, barring him from future filings as a debtor for 180 days and after that barring him from seeking bankruptcy relief under any provision of the United States Bankruptcy Code unless and until the unpaid balance of filing fees is paid in full. *Id.* The bankruptcy was closed on February 3, 2026. The Common Pleas Court, however, was not informed of the termination of the bankruptcy case until March 18, 2026. At that time, the Common Pleas Court lifted the stay and returned the foreclosure case to the active docket.

Between December 2025 and February 2026, Kimble made three attempts to secure loss mitigation with Rushmore. (Doc. 1, at 5-6). Rushmore denied mitigation relief on all three applications. *Id.* at 6; Docs. 12-9, 12-10, 12-11. Upon the filing of his third application, Rushmore informed him that because that was not his first loss mitigation application during the current delinquency, any foreclosure-related activities would continue, and the foreclosure sale date, if set,

6

would not be postponed. (Doc. 12-8). The last application was denied on February 18, 2026. (Doc. 1, at 6).

On February 19, 2026, Kimble filed an Emergency Motion to Reopen the Case, Stay the Foreclosure Sale, and for Relief. In that Motion, he asserted Rushmore's conduct violates multiple provisions of the Real Estate Settlement Procedure Act (RESPA) and Regulation X, 12 C.F.R. § 1024, and committed dual tracking offenses in violation of 12 C.F.R. § 1024(g)(1) and (2). He claims that Rushmore failed to exercise reasonable diligence in reviewing his applications under 12 C.F.R. § 1024.41(b)(1) and (c)(1) and improperly failed to apply his partial payment in violation of 12 C.F.R. § 1024.36(c). The Common Pleas Court has yet to rule on that Motion.

On March 26, 2026, the Common Pleas Court issued another Order of Sale. That sale was set for May 27, 2026.

On March 30, 2026, Kimble attempted to stop the foreclosure sale with two filings. First, he filed this action in this Federal Court asserting violations of RESPA, the TILA, the FDCPA, and civil rights statutes. *See* Doc. 1. He included a Motion for a Temporary Restraining Order asking this Court to enjoin the State court from proceeding with the sheriff's sale. (Doc. 3); *see also* Doc. 1, at 13 (requesting "preliminary and permanent injunctions halting foreclosure"). Kimble then took a copy of this Federal Complaint to the Common Pleas Court and attached it to his Renewed Emergency Motion to Stay Foreclosure Proceedings and to Vacate the Order of Sale, asking the Common Pleas Court to stay the state court foreclosure action while the federal case is pending. He acknowledged to the Common Pleas Court that "[t]his case presents overlapping facts, in state and federal court involving the same property, same mortgage relationship, same alleged default, and same core dispute over whether [Home Point's] claimed debt figures and foreclosure activity are legally supportable." *Home Point Financial v. Arnold*, No. G-4801-CI-0201803432-000 (Lucas Cnty Ct. C.P.) (motion filed Mar. 30, 2026). Kimble filed a Renewed Emergency

7

Motion to Stay the Execution of the Judgment on April 13, 2026 in the Common Pleas Court and asked the court to vacate the Order of Sale. The Common Pleas Court has not ruled on that Motion.

Getting no response to his Emergency Motions to stop the sheriff's sale, Kimble filed a second Renewed Motion to Stay the Proceedings in the Common Pleas Court. The Common Pleas Court has not yet ruled on that Motion. He also filed an Emergency Motion to Expedite ruling on his Motion for Temporary Restraining Order in this Court. (Doc. 4).

On May 20, 2026, Kimble filed another Notice of Federal Proceedings in the Common Pleas Court and again asked that court to stay the sale and the foreclosure case, pending this Court's resolution of his federal case.

On May 26, 2026, the day before the scheduled sale, the state court issued the following docket entry order:

> This matter came before the Court upon review of the file and the numerous motions and filings submitted by Defendant Marquis Kimble beginning in February 2026. The Court finds that additional time is necessary in order to properly review and address all pending motions and filings prior to any Sheriff's Sale proceeding forward. The Court would further note that this Order is administrative in nature and shall not be construed as a ruling on the merits of any pending motion currently before the Court. It is therefore ORDERED, ADJUDGED and DECREED that the Sheriff's Sale scheduled for May 27, 2026 regarding the subject property is hereby VACATED and REMOVED from the Sheriff's Sale. It is further ORDERED that any sale of the subject property is hereby STAYED until further Order of this Court.

### KIMBLE'S LEGAL CLAIMS IN THIS CASE

As Kimble indicated to the Common Pleas Court, he raises claims in this Federal Court arising from the mortgage servicing and the foreclosure proceedings. In Count I, he contends that Rushmore and Home Point violated dual tracking during his December 2025 and January 2026 loss mitigation efforts. He asserts that under RESPA and Regulation X, 12 C.F.R. § 1024.41(f)-(g), the servicer cannot proceed with foreclosure efforts after he applies for loss mitigation, until those are applications resolved. He contends that Rushmore and Home Point continued to pursue

the foreclosure efforts and did not request a stay (although the foreclosure case was stayed already due to his bankruptcy filing), after he completed his three loss mitigation applications. He also alleges that his applications were denied due to "internal system errors" and Rushmore failed to exercise reasonable diligence to correct these errors in violation of 12 C.F.R. § 1024.41(b)-(c).

Kimble next asserts in Counts II and III that Rushmore and Home Point improperly handled his partial payment by placing it in a suspense account, rather than subtracting it from the loan balance. He asserts this is a violation of RESPA, 12 U.S.C. § 2605, Regulation X, 12 C.F.R. § 1024.36, the TILA, 15 U.S.C. § 1601, and Regulation Z, 12 C.F.R. § 1026.36(c)(1).

In Count IV, Kimble claims Rushmore engaged in unfair debt collection practices by misrepresenting to him during his December 2025 and January 2026 loss mitigation applications that he could qualify for " a Flex modification" due to his dismissed bankruptcy then telling him that he did not qualify due to internal errors, and misrepresenting the pay-off balance of the loan by not subtracting the partial payment held in the suspense account.

In Count V, Kimble asserts claims under 42 U.S.C. § 1983 against Home Point, Rushmore, and Mr. Cooper. He contends that these Defendants denied him due process and violated his Fourth Amendment rights to be free from unreasonable seizure of his property in a foreclosure action. He again asserts the foreclosure action should have been stayed while his loss mitigation applications were pending, and his partial payment should have been credited to the amount owed on the mortgage.

In Count VI, Kimble asserts claims under 42 U.S.C. §§ 1982, 1983, and the Fair Housing Act against MNP Properties. He asserts MNP Properties' decision to cancel the purchase agreement prior to closing was due to his race and his activities as a civil rights litigant in other cases.

The other causes of action Kimble asserts in his Complaint arise under state law for breach of contract, promissory estoppel, the Ohio Consumer Sales Practices Act, and bad faith. He does not explain any of these claims but simply refers the Court to paragraphs 1-110 of his Complaint.

Kimble first requests injunctive and declaratory relief. Specifically, he asks this Court to permanently enjoin the Defendants and their agents from: (1) proceeding with any foreclosure sale or title transfer in the Lucas County Common Pleas Court foreclosure action; (2) treating him as in default in any amount that does not include the partial payment currently held in the suspense account; (3) engaging in dual tracking while loss-mitigation or "account-correction" is pursued; and (4) pursuing or enforcing any sheriff's sale or post-sale transfer. (Doc. 1, at 13).

In addition, Kimble seeks monetary damages, and a declaration from this Court that the Defendants' activities in the foreclosure process violated federal law and his constitutional rights.

Finally, Kimble reiterates his request for issuance of a preliminary and permanent injunction halting the Lucas County Common Pleas Court foreclosure "and related collection activities" inconsistent with federal law and constitutional protections.

Defendants Home Point, Mr. Cooper, and Rushmore filed a Motion to Dismiss pursuant to Federal Civil Procedure Rule 12(b)(6). (Doc. 12). They dispute each of the legal claims asserted by Kimble. Specifically, they assert that 12 C.F.R. § 1024.41(f) relates only to pre-foreclosure activities;12 C.F.R. § 1024.41(g) does not apply because Kimble submitted duplicative requests and the Defendants were not required to stay the foreclosure action; both of the prior claims are time barred; RESPA does not govern how mortgage payment are applied 12 C.F.R. § 1026.36(c)(1) of TILA requires partial payments to be held in a suspense account; the actions which Kimble cites as violations of the FDCPA were not committed while Rushmore was attempting to collect a debt; and 42 U.S.C. § 1983 does not apply as none of the Defendants are state actors.

10

**DISCUSSION**

Claims asserted against MNP Properties

Kimble filed a Motion for Default Judgment against MNP Properties. (Doc. 13). As an initial matter, it is not clear that he obtained service on this entity. Kimble attaches a copy of the alleged purchase agreement to his Complaint. (Doc. 1-2, at 17-19). Although it purports to be a purchase agreement between Kimble[2], Arnold, and MNP Properties, LLC, the address listed for MNP Properties is "77 Suffolk St. Ancaster ON L9K1M9." The Court has found no connection between MNP Properties, LLC and this Ontario, Canada address, which is listed on the Complaint. Plaintiff's proof of service on this entity is at a Canton, Ohio address. (Doc. 13-1).

Moreover, the claims against MNP Properties are improperly joined in this action. Although plaintiffs are permitted to assert multiple claims against multiple parties in a lawsuit, Federal Civil Rule 20(a) limits when multiple defendants may be joined in one action. A civil plaintiff may join multiple defendants in a single action, but only if the plaintiff asserts a claim to relief against each defendant that arises out of the same transaction or occurrence, or series of transactions or occurrences, and if a question of law or fact common to all defendants will arise in the action. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Shivers v. Johnston*, 2022 WL 16706842, at *3 (W.D. Mich.) (citing cases). "Unrelated claims against different defendants belong in different suits, . . . to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s]," *George*, 507 F.3d at 607.

Kimble's claims against MNP Properties do not arise out of the same transaction and occurrence as the claims against the other Defendants. Although Kimble was attempting to avoid the sheriff's sale by securing a private sale outside of the foreclosure case, the transaction itself

---

2. The Court observes that Kimble's first name is misspelled "Maquis" on the first page of the agreement. (Doc. 1-2, at 1).

11

was entirely separate from the servicing of the mortgage. There are no common questions of law or fact between Kimble's claims against MNP Properties for alleged breach of the purchase agreement based on his race, and his claims against the mortgage servicers for failing to credit the partial payment to the loan balance, failure to seek a stay of the foreclosure while considering loss mitigation, and failure to exercise due diligence in evaluating his loss mitigation applications. Federal Civil Rule 21 permits a court on motion or on its own to add or drop a party who is not properly joined in the action. The Court finds it prudent to dismiss the claims against MNP Properties LLC without prejudice, as they unrelated to the claims asserted against the mortgage servicers.

Claims Asserted Against Home Point, Mr. Cooper, and Rushmore

Furthermore, it apparent from the lengthy history of the foreclosure action that this federal court case was filed for the sole purpose of disrupting and delaying the foreclosure sale. The foreclosure proceeding was originally filed in the Common Pleas Court in August 2018. Kimble was served with that Complaint in August 2018. His activities outside of the foreclosure over the next seven and a half years demonstrate that he was well aware of the foreclosure action, yet he did not file anything in that action or participate in that litigation until October 31, 2025. By that point, Home Point had been granted a judgment in foreclosure nearly seven years earlier. The sheriff's sale had been set and cancelled numerous times after Kimble filed multiple bankruptcy actions he did not complete, and made multiple attempts at loss mitigation which stayed the foreclosure case. Eventually, the Bankruptcy Court barred him from filing any new actions for at least 180 days, and required him to pay all delinquent filing fees. His final attempts at seeking loss mitigation did not produce the stay of the sheriff's sales, although the foreclosure action was already stayed as a result of the bankruptcy action. Finally, over seven years after judgment had been granted, Kimble entered an appearance in the litigation with a Motion for Relief from

12

Judgment. That did not stop or delay the sheriff's sale as the Common Pleas Court denied it on the day it was filed. His Emergency Motions to Stay the Execution of the Sheriff's Sale have not been answered by the Common Pleas Court and the sale date was set for May 27, 2026. He then filed this action in federal court and another Emergency Motion to Stay the Sheriff's Sale in the Common Pleas Court on the same day, asking that court to stay the state court foreclosure action so this federal court can decide issues central to the foreclosure litigation.

Contrary to Kimble's assertion, it is this Federal Court that must abstain in favor of allowing the state court to continue with the litigation that has been pending before it for many years. The comity-based abstention doctrine developed in the Supreme Court case of *Younger v. Harris* prevents federal courts from interfering in pending state-court proceedings, even if there is an allegation of a constitutional violation or violation of federal law. 401 U.S. 37, 45. The *Younger* abstention doctrine reflects the strong federal policy against federal interference with state judicial proceedings, and promotes the presumption that state courts are equally competent at safeguarding federal constitutional rights. *Id*. *Younger* abstention is not a question of jurisdiction, but is rather based on "strong policies counseling against the exercise of such jurisdiction." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc*., 477 U.S. 619, 626 (1986). Federal Courts may raise *Younger* abstention *sua sponte*. *O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008).

When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir. 1988). If the state court defendant files such a case, *Younger* abstention requires the federal court to defer to the state proceeding. *Id.*; *see also Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings

13

afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm'n. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the state." *Younger*, 401 U.S. at 44.

In this case, any decision this Court would render on any of the Kimble's claims against Home Point, Mr. Cooper, or Rushmore would unduly interfere with the state court's administration of the pending foreclosure action as the questions at issue are intertwined. Although the judgment of foreclosure was issued by the Common Pleas Court in 2019, the execution of that judgment through the sheriff's sale is still pending. State foreclosure matters are of paramount state interest. *Doscher v. Menifee Circuit Ct.*, 2003 WL 22220534, at *1 (6th Cir.) (finding *Younger* abstention was required in plaintiff's challenge to a state court foreclosure action).

The third requirement of *Younger* is that Plaintiff must have (or have had) an opportunity to assert his federal challenges in the state court proceeding. The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the federal claims. *Moore v. Sims*, 442 U.S. 415, 430 (1979). It does not mean that the Plaintiff must have availed himself of those opportunities, nor does it require proof that he will have a likelihood of success on the merits on his claims in state court. The burden at this point rests on the plaintiff to demonstrate state procedural law bars presentation of his claims. *Pennzoil Co.*, 481 U.S. at 14. Kimble does not cite to a procedural law that denies him the opportunity of presenting his claims. In fact, he did present them to the Common Pleas Court in his Emergency Motions, but that court has not ruled on those Motions.

All of the requirements for *Younger* abstention have been met. This Court cannot enjoin a state court proceeding or interfere in it in any way.

**CONCLUSION**

14

For the foregoing reasons, good cause appearing, it is

ORDERED that Kimble's claims against MNP Properties LLC be, and the same hereby are, DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that all of Kimble's requests for temporary or permanent injunctive relief and declaratory relief, including his two Motions for Temporary Restraining Orders and Preliminary Injunctions (Doc. 3, 4) be, and the same hereby are, DENIED; and it is

FURTHER ORDERED that this action be, and the same hereby is STAYED pending the conclusion of *Home Point Financial v. Arnold*, No. G-4801-CI-0201803432-000 (Lucas Cnty. Ct. C.P.), including the sheriff's sale of the property, the confirmation of that sale, transfer of title to the buyer, all appeals associated with that action, and any other collection or enforcement actions arising from that case. This case is administratively CLOSED, subject to reopening upon a written Motion to Reopen filed by Plaintiff demonstrating that the Lucas County Court of Common Pleas case listed above, including the sheriff's sale of the property, the confirmation of that sale, transfer of title to the buyer, all appeals associated with that action, and any other collection or enforcement actions arising from that case have been resolved or concluded. No claims or defenses are waived as a result of the stay; and it is

FURTHER ORDERED that Defendants' pending Motion to Dismiss (Doc. 12) be, and the same hereby is, DENIED without prejudice to refiling in the event the case is reopened; and it is

FURTHER ORDERED that all remaining pending motions in this case be, and the same hereby are, DENIED AS MOOT; and it is

FURTHER ORDERED that because this case is stayed, from this point forward, the only motion that the Court will entertain is a Motion to Reopen that demonstrates that the Lucas County Common Pleas Court foreclosure case including the sheriff's sale of the property, the confirmation of that sale, transfer of title to the buyer, all appeals associated with that action, and any other

15

collection or enforcement actions arising from that case have been resolved or concluded. **Until a Motion to Reopen is granted, no other filings will be accepted or considered by the Court.**

         s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: June 23, 2026

16